# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 CR 954 | **DATE** | 6/22/2000 |
| **CASE TITLE** | UNITED STATES OF AMERICA vs. PAUL W. ASPER | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's Motion to Dismiss Counts 1 and 3 as They Relate to the Black Rhinoceros Horns Described in the Indictment [41] is denied. Defendant's Motion to Dismiss Counts 1 and 2 [15, 24] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUN 23 2000 | |
| ✓ | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 75 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Case No. 98 CR 954 |
| v. | ) ) | |
| PAUL W. ASPER, | ) ) | Judge Joan B. Gottschall |
| Defendant. | ) ) | |

DOCKETED JUN 23 2000

## MEMORANDUM OPINION AND ORDER

The United States has brought a four-count indictment against Paul W. Asper stemming from his importation of certain wildlife products in December 1998. The first two counts charge Asper with violations of 18 U.S.C. § 545 based on his alleged importation of two black rhinoceros horns, one Argali sheep jaw bone, and one partial skull with two horns of a Mongolian gazelle. Count 3 charges that Asper violated 18 U.S.C. § 1001 by making fraudulent misrepresentations related to those wildlife products on a customs form. Count 4 charges that Asper, a convicted felon, possessed a firearm in violation of 18 U.S.C. § 922(g)(1). Asper has filed a motion to dismiss Counts 1 and 3, along with a separate motion to dismiss Counts 1 and 2. For the reasons set forth below, the court denies both motions.

### Motion to Dismiss Counts 1 and 3

*Count 1*

Asper seeks dismissal of Count 1 on three grounds: that he was unable to form the requisite intent under 18 U.S.C. § 545; that his 1998 transport of the black rhinoceros horns was not "contrary to law"; and that § 545 is void for vagueness as applied to him. Generally, Asper argues he could not have violated § 545 by returning to the United States with the horns because

75

he legally had possessed the horns in this country since 1976. According to Asper, if his possession of the horns in the United States was legal, so was his return from an overseas trip with the horns. Based on this argument, Asper alleges that he lacked the intent to import the horns illegally, relying on *United States v. Claybourn*, 180 F. Supp. 448 (S.D. Cal. 1960).

Asper is charged under 18 U.S.C. § 545, which provides that:

> Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces or attempts to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or
>
> Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law –
>
> Shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 545. Asper is charged under the second paragraph of this section.

Asper's first basis for dismissing Count 1 is his assertion that the government must establish that he knew his importation was illegal in order to violate the second paragraph of § 545. In support, he looks to the Fifth Circuit Pattern Instruction[1] on § 545. The instruction provides that:

> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First: That the defendant imported [the merchandise] into the United States;
>
> Second: That the defendant's importation was contrary to [specific laws]; and

---

[1] Apparently, the Fifth Circuit is the only circuit with a pattern instruction on § 545's second paragraph.

2

Third: That the defendant knew the importation was contrary to law.

Pattern Crim. Jury Instr. Fifth Circuit § 2.31.

In response, the government points to the Note following the instruction, which explains the intent required for a violation of § 545's second paragraph:

> Congress has written the second paragraph of Section 545 in the disjunctive. Accordingly, the instruction should be modified to conform to the mental state alleged in the indictment. The offense encompassed by the second paragraph of Section 545, unlike the offense contained in the first paragraph of the statute, does not require a willful violation – i.e., the defendant does not have to know the provisions of the specific law his importation is alleged to have violated. *Babb v. United States*, 252 F.2d 702, 708 (5th Cir. 1958). The defendant need only act knowing that his conduct is illegal in some respect.

Pattern Crim. Jury Instr. Fifth Circuit § 2.31, Note.

The government contends that the Note "is a clear acknowledgment of the different mens rea requirements between the first paragraph of § 545, and the second." (Scienter Resp. at 2) According to the government, Asper's brief "reads as if the government must show that individuals charged with violating the second paragraph of § 545 were carrying the violated regulations on their person in order to sustain a conviction." (*Id.*) The government objects that "reading a specific intent requirement into the second paragraph of § 545 would essentially erect an impossible burden on the government by requiring the government to prove the importer's actual knowledge of the laws and regulations that were violated." (*Id.* at 5-6)

The court agrees with the government that the two paragraphs of § 545 require two different levels of intent. As the Ninth Circuit recognized, the language of the second paragraph "is written in the disjunctive, requiring proof that an accused either 'knowingly' [o]r 'fraudulently' import merchandise in violation of the law." *United States v. Davis*, 597 F.2d

3

1237, 1239 (9th Cir. 1979). The court also agrees that the second paragraph cannot reasonably be construed to require that a defendant know of the precise statute or regulation that his importation violates. Such a notion finds no support in the statute's text, and, in any event, is not suggested by Asper. (*See* Asper's Scienter Brief at 3-4, 11; Scienter Reply at 4 n.3)

The fact that a defendant need not have intended to violate a specific law does not render the defendant's *mens rea* completely irrelevant to the second paragraph of § 545. The court agrees with the Fifth Circuit that a defendant still must "act knowing that his conduct is illegal in some respect." Pattern Crim. Jury Instr. Fifth Circuit § 2.31, Note. The statute's disjunctive use of "fraudulently or knowingly" does not preclude this middle ground. The term "fraudulently" entails elements of proof beyond mere knowledge that an act is contrary to law. Allowing the term "knowingly" to modify "imports," as well as "contrary to law," does not render superfluous the statute's use of "fraudulently."[2]

The court's interpretation of § 545 is supported by *Liparota v. United States*, 471 U.S. 419 (1985), in which the Supreme Court addressed a federal statute governing food stamp fraud which provided "that 'whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [the statute] or the regulations' is subject to a fine and imprisonment." *Id.* at 420 (quoting 7 U.S.C. § 2024(b)(1)). In that case, the government argued that "petitioner violated the statute if he knew that he acquired or possessed food stamps and if in fact that acquisition or possession was in a manner not authorized by

---

[2] In this regard, the court disagrees with *United States v. Dominguez-Mestas*, 929 F.2d 1379 (9th Cir. 1991), in which the Ninth Circuit failed to recognize this middle ground. *See id.* at 1382 ("Because Congress used express language to require *mens rea* elements in the first paragraph [of § 545], the requirement of knowledge alone for violation of the second paragraph negates an implicit *mens rea* element.").

4

statute or regulations." *Id.* at 423. The defendant contended that "an individual violates the statute if he knows that he has acquired or possessed food stamps *and* if he also knows that he has done so in an unauthorized manner." *Id.*

The *Liparota* Court held that "[a]bsent indication of contrary purpose in the language or legislative history of the statute, we believe that § 2024(b)(1) requires a showing that the defendant knew his conduct to be unauthorized by statute or regulations." *Id.* at 425. In so holding, the Court rejected the government's argument "that a comparison between § 2024(b)(1) and its companion, § 2024(c), demonstrates a congressional purpose not to require proof of the defendant's knowledge of illegality in a § 2024(b)(1) prosecution." *Id.* at 428. The government contrasted § 2024(b)(1), which punished "whoever knowingly uses . . . coupons or authorization cards in any manner not authorized," with § 2024(c), which was aimed at stores authorized to accept food stamps from program participants. *See id.* The latter section punished "[w]hoever presents, or causes to be presented, coupons for payment or redemption . . . knowing the same to have been received, transferred, or used in any manner in violation of [the statute] or the regulations." 7 U.S.C. § 2024(c). "Since § 2024(c) undeniably requires a knowledge of illegality," the government's "suggested inference" was "that the difference in wording and structure between the two sections indicates that § 2024(b)(1) does not." *Id.* at 428-29.

The Court found the difference in wording between the two sections to be "too slender a reed to support the attempted distinction." *Id.* at 429. The Court reasoned that:

> [I]f the Government's argument were accepted, it would lead to the demise of the very distinction that Congress is said to have desired. According to the Government, Congress *did* intend a knowledge of illegality requirement in § 2024(c), while it *did not* intend such a requirement in § 2024(b)(1). Anyone who has violated § 2024(c) has "present[ed], or caus[ed] to be presented, coupons for payment or redemption"

in an unauthorized manner. Such a person would seemingly have also "use[d], transfer[red], acquir[ed], alter[ed], or possess[ed]" the coupons in a similarly unauthorized manner, and thus to have violated § 2024(b)(1). It follows that the Government will be able to prosecute any violator of § 2024(c) under § 2024(b)(1) as well. If only § 2024(c) – and not § 2024(b)(1) – required the Government to prove knowledge of illegality, the result would be that the Government could *always* avoid proving knowledge of illegality in food stamp fraud cases, simply by bringing its prosecutions under § 2024(b)(1). If Congress wanted to require the Government to prove knowledge of illegality in some, but not all, food stamp fraud cases, it thus chose a peculiar way to do so.

*Id.* at 429-30.

Similarly, under § 545, anyone who has "smuggle[d], or clandestinely introduce[d] . . . into the United States any merchandise which should have been invoiced" within the meaning of the first paragraph has necessarily "import[ed] or br[ought] into the United States . . . merchandise contrary to law" within the meaning of the second paragraph. If there were no *mens rea* requirement under the second paragraph, the government could prosecute smugglers under that provision without needing to establish any criminal intent whatsoever – even though the need for criminal intent is clearly spelled out in the first paragraph, which purports to address smugglers.

Another aspect of the *Liparota* Court's analysis that bears on this court's interpretation of § 545 is its "mistake of law" discussion. In defending its holding against the dissent's critique, the Court asserted that "[o]ur holding today no more creates a 'mistake of law' defense than does a statute making knowing receipt of stolen goods unlawful." *Id.* at 425 n.9. The Court explained that:

> In both cases, there is a legal element in the definition of the offense. In the case of a receipt-of-stolen-goods statute, the legal element is that the goods were stolen; in this case, the legal element is that the "use, transfer, acquisition," etc. were in a manner not authorized by statute or regulations. It is not a defense to a charge of

6

> receipt of stolen goods that one did not know that such receipt was illegal, and it is not a defense to a charge of a § 2024(b)(1) violation that one did not know that possessing food stamps in a manner unauthorized by statute or regulations was illegal. It *is*, however, a defense to a charge of knowing receipt of stolen goods that one did not know that the goods were stolen, just as it is a defense to a charge of a § 2024(b)(1) violation that one did not know that one's possession was unauthorized.

*Id.*

Under this reasoning, the "legal element" of the offense defined in the second paragraph of § 545 is that the importation of merchandise was "contrary to law."[3] Thus, Asper may defend himself by asserting that he did not know that his importation was contrary to law. However, Asper need not have had knowledge of particular violations, but only that the importation was contrary to law in some respect.

The court rejects the government's characterization of § 545 as defining a public welfare offense, again based on insight from the *Liparota* Court. "In most previous instances, Congress has rendered criminal a type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety." *Id.* at 433. Recounting past cases in which the Court held that the government did not have to prove that the recipient of unregistered hand grenades knew that they were unregistered, *see United States v. Freed*, 401 U.S. 601, 609 (1971), and that the shipping of adulterated and misbranded drugs was punishable even if the perpetrator did not know that it was wrong, *see United States v. Dotterweich*, 320 U.S. 277, 284 (1943), the *Liparota* Court held that the unauthorized acquisition or possession of food stamps was not a "public welfare" offense. *Liparota*, 419 U.S. at 433. "A

---

[3] This is not circular reasoning, as the "contrary to law" requirement is not co-extensive with the crime defined by § 545, but is based on the contravention of statutes or regulations external to § 545.

7

food stamp can hardly be compared to a hand grenade, see *Freed*, nor can the unauthorized acquisition or possession of food stamps be compared to the selling of adulterated drugs, as in *Dotterweich*." *Id.* The government has offered no convincing reason why § 545, a felony statute prohibiting the illegal importation of any merchandise – whether harmless or not – should be treated as a public welfare statute, and the court declines to treat it as such.

The court's *mens rea* holding "does not put an unduly heavy burden on the Government." *Id.* at 433-34. As the *Liparota* Court observed:

> [T]he Government need not show that he had knowledge of specific regulations governing food stamp acquisition or possession. Nor must the Government introduce any extraordinary evidence that would conclusively demonstrate petitioner's state of mind. Rather, as in any other criminal prosecution requiring *mens rea*, the Government may prove by reference to facts and circumstances surrounding the case that petitioner knew that his conduct was unauthorized or illegal.

*Id.* at 434. Further, "requiring *mens rea* is in keeping with our longstanding recognition of the principle that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *Id.* at 427 (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)).

While the court agrees with Asper that a *mens rea* element is implicit in the second paragraph of § 545, the court's acceptance of this notion does not warrant dismissal of Count 1 of the indictment. Based on the facts surrounding the importation, the government may be able to prove that Asper knew that the importation was contrary to law.

Asper's second basis for dismissing Count 1 is his argument that the government cannot show that the importation of the horns was, in fact, contrary to law, as required by § 545. Asper insists that he "has always legally possessed and maintained the 'pre-Act' black rhinoceros horns which underlie Count 1 of the indictment." (Mtn. to Dismiss at 5) This argument fails in light of

the full text of 16 U.S.C. § 1538(b)(1), which provides that § 1538 (a)(1)(A)'s importation prohibition:

> shall not apply to any fish or wildlife which was held in captivity or in a controlled environment on (A) December 28, 1973, or (B) the date of the publication in the Federal Register of a final regulation adding such fish or wildlife species to any list published pursuant to subsection (c) of section 1533 of this title: *Provided, That such holding and any subsequent holding or use of the fish or wildlife was not in the course of a commercial activity.* With respect to [prohibited acts, including importation] which occurs after a period of 180 days from (i) December 28, 1973, or (ii) the date of publication in the Federal Register of a final regulation adding such fish or wildlife species to any list published pursuant to subsection (c) of section 1533 of this title, there shall be a rebuttable presumption that the fish or wildlife involved in such act is not entitled to the exemption contained in this subsection.

§ 1538(b)(1). The government has submitted evidence suggesting that Asper brought the horns to China in an attempt to sell them; if that is the case, his "holding" of the horns upon his return to the United States would appear to have been "in the course of a commercial activity." In the court's view, § 1538(a)(1)(A) – in conjunction with § 1538(b)(1) – provides a basis upon which the government can attempt to prove that Asper's 1998 importation of the rhinoceros horns was "contrary to law."

Finally, the court does not find § 545 to be void for vagueness as applied to Asper's 1998 importation of the horns. Asper argues that "nothing in either the language of § 545 nor in Mr. Asper's prior experience and interaction with the federal government would fairly have led Mr. Asper to understand or believe that merely traveling with the rhinoceros horns – horns which he legally possessed – could transform otherwise innocent conduct into a federal criminal offense." (Mtn. to Dismiss at 13)

If the government cannot prove that Asper was doing more than "merely traveling" with the horns, Asper's position may prove valid. However, as discussed above, there may be

evidence that Asper was attempting to sell the horns. The court believes that Asper reasonably could have expected that such conduct would run afoul of federal law. Asper acknowledges that "he knew the horns were not governed by the Endangered Species Act." (Mtn. to Dismiss at 12-13) As shown above, the very statute providing that exemption also warns that commercial use of the wildlife negates the exemption. Given Asper's professional background and previous experience with the endangered species laws, the court finds that he reasonably could have foreseen the applicability of § 545 to his conduct. Asper's motion to dismiss Count 1 is denied.

*Count 3*

Asper seeks dismissal of Count 3 on two grounds: that he made no false statement on the customs form; and that any falsity was not material. The court finds that neither ground warrants dismissal.

Customs Form 6059B provides, in relevant part:

Agricultural and Wildlife Products

To prevent the entry of dangerous agricultural pests and prohibited wildlife, the following are restricted: Fruits, vegetables, plants, plant products, sod, meats, meat products, birds, snails, and other live animals or animal products, wildlife and wildlife products. Failure to declare all such items to a Customs/Agricultural/Wildlife officer can result in penalties and the items may be subject to seizure.

\*\*\*\*

Merchandise

\*\*\*\*

U.S. Residents must declare in item 14 the total value of ALL articles, including commercial goods and samples, they acquired abroad . . . .

Asper argues that "the plain language of the form tells the person filling it out that the

'wildlife products' to be reported are limited to 'prohibited wildlife.'" (Mtn. to Dismiss at 9) The court disagrees. The introductory clause of the "Agricultural and Wildlife Products" paragraph merely sets forth the purpose of the declaration requirement; it is not an exhaustive listing of the products to be declared. Under Asper's reading, the lengthy list of products following the introductory clause would be meaningless – unless a product qualified as an "agricultural pest" or "prohibited wildlife," there would be no need to declare it. The paragraph clearly calls for "wildlife and wildlife products" to be declared, regardless of their prohibited status. The jury may find that Asper's failure to do so was a false statement under 18 U.S.C. § 1001.

Asper also insists that according to the form's "Merchandise" provision, he only needed to declare the horns if they had been acquired abroad. A more sensible reading of this provision, however, is that the only "merchandise" that needed to be declared were those items acquired abroad. There is no indication on the form that the "Merchandise" provision governs all of the form's other categories, rather than merely setting forth the conditions under which merchandise must be declared.

Of course, Asper is not precluded from arguing his interpretations of the customs form to the jury. However, given that – in the court's view – the interpretations strain credulity, they do not render Count 3 insufficient as a matter of law.

Further, the court cannot rule, as a matter of law, that any false statements on the form were immaterial. Because the court cannot say that Asper's 1998 importation of the horns was legal, it follows that Asper's failure to declare those horns may prove material to the jury's determination. Asper's motion to dismiss Count 3 as it relates to the black rhinoceros horns is

11

denied.

## Motion to Dismiss Counts 1 and 2

Asper has separately moved to dismiss Counts 1 and 2 of the indictment. Both of these counts were brought under 18 U.S.C. § 545, and thus require proof that Asper's importation of items was "contrary to law." The law that Asper's allegedly illegal importation violated include various administrative regulations. Asper argues that the "contrary to law" language in § 545 cannot be satisfied by proof that only administrative regulations were violated.[4]

In *United States v. Eaton*, 144 U.S. 677 (1892), the defendant was convicted of failing to maintain, in compliance with regulations of the Commissioner of Internal Revenue, books showing his receipt and distribution of oleomargarine, as well as failing to make monthly returns to the Collector of Internal Revenue showing the receipt and disposition of oleomargarine, also in violation of administrative regulations. The Court held that a criminal penalty cannot be premised on the violation of a regulation:

> It would be a very dangerous principle to hold that a thing prescribed by the commissioner of internal revenue, as a needful regulation under the oleomargarine act, for carrying it into effect, could be considered as a thing 'required by law' in the carrying on or conducting of the business of a wholesale dealer in oleomargarine, in such manner as to become a criminal offense punishable under section 18 of the act; particularly when the same act, in section 5, requires a manufacturer of the article to keep such books and render such returns as the commissioner of internal revenue, with the approval of the secretary of the treasury, may, by regulation, require, and does not impose, in that section or elsewhere in the act, the duty of keeping such books and rendering such returns upon a wholesale dealer in the article.

144 U.S. at 688.

---

[4] To the extent that Count 1 is based on Asper's alleged violation of 16 U.S.C. § 1538(a)(1)(A) and (c)(1), the underlying premise of Asper's argument – *i.e.*, that *only* administrative regulations were violated – appears to be inapplicable. In any event, the court's resolution of Asper's argument does not rest on this point.

12

The Supreme Court addressed this issue again in *United States v. Grimaud*, 220 U.S. 506 (1911). A regulation of the Secretary of Agriculture mandated that persons seeking to graze stock in a forest reserve must first secure a permit. The defendants were indicted for grazing sheep on the Sierra Forest Reserve without a permit, in violation of a statute making it a crime to violate rules and regulations of the Secretary of Agriculture. The Court upheld the convictions, reasoning that it was impossible for Congress to make the kind of fine and specific judgments necessary to determine whether grazing should or should not be permitted on any particular reserve. The Court distinguished *Eaton*, explaining that the problem in that case was that the legislation in question did not provide criminal penalties for violation of the regulations defendant was charged with violating.

The Court discussed the issue again in *Singer v. United States*, 323 U.S. 338 (1945). Addressing the contention that *Eaton* established the principle that a provision which only punishes violations of a "law" does not cover violations of rules or regulations made in conformity with that law, *id.* at 344, the Court noted that *Eaton* "turned on its special facts" and "has not been construed to state a fixed principle that a regulation can never be a 'law' for purposes of criminal prosecutions." *Id.* at 345. Rather, the Court observed, "[i]t may or may not be, depending on the structure of the particular statute." *Id.*

The "laws" that Asper is charged with violating in this case are: 19 C.F.R. § 148.11, requiring that all articles brought into the United States by an individual be declared to a Customs officer; 16 U.S.C. §§ 1538(a)(1)(A), which prohibits the importation of endangered

13

species, and 1538(c)(1),[5] which makes it unlawful for any person subject to the jurisdiction of the United States to engage in any trade in any specimens contrary to the provisions of the Convention on International Trade in Endangered Species of Wild Fauna and Flora; and 50 C.F.R. §§ 14.61, 17.21(b), 17.21(e) and 23.11(b), requiring a wildlife import declaration, prohibiting the importation of endangered wildlife, prohibiting the shipment in interstate commerce of endangered wildlife in the course of commercial activity, and prohibiting the importation of wildlife listed in schedule 23.23.

One problem with penalizing detailed, technical regulations is the concern that someone might violate them unknowingly. But there is little such danger in this case. The requirement of a customs declaration and the importance of making it accurate is a matter of common knowledge. Further, Asper's background gives the court little concern that he may have violated the provisions at issue here in reasonable ignorance of their content. While under other circumstances, the incorporation of highly technical regulations into § 545 may prove troublesome, such circumstances are not presented by this case. The court also notes that the schedules that are part of the endangered species regulations would be difficult for Congress to address legislatively, since they can be presumed to change with some frequency.

The issue of whether § 545's "contrary to law" language embraces Customs, Fish and Wildlife Service and Department of Agriculture regulations was thoroughly addressed in *United States v. Mitchell*, 39 F.3d 465 (4th Cir. 1994), *cert. denied*, 515 U.S. 1142 (1995). This court

---

[5] The court notes Asper's contention that the government has not indicated how § 1538(c)(1) was violated by Asper. The government should inform Asper which acts constitute a violation of that section, or else withdraw that portion of the charge. If the government waits until trial to provide Asper with the requested information, it risks having that portion of the charge stricken by the court.

finds the reasoning of the Fourth Circuit persuasive and holds, as that court did, that the violation of the regulations charged in this case, if proven, would constitute a violation of § 545. The motion to dismiss Counts 1 and 2 is therefore denied.

### Conclusion

For these reasons, both of Asper's motions to dismiss are denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: June 22, 2000